ROBERTSON, Presiding Judge.
This is an appeal from a judgment denying visitation and awarding child support.
J.T.H. (the father) and W.R.H. (the mother) began dating in 1985, and their relationship continued until March 1988. On May 5, 1988, the mother gave birth to a son, T.Z.H. (the child).
On December 19, 1988, the father filed a complaint in the Circuit Court of Mobile County, seeking a determination of paternity. The father further requested that the trial court set child support payments and award him visitation privileges if paternity was established.[1]
On August 22, 1991, the case was transferred to the Juvenile Division of the Mobile County Circuit Court. On May 19, 1992, the trial court granted the mother’s motion requesting that the father undergo a psychological evaluation at Mobile Mental Health. Following an ore tenus proceeding on January 29, 1993, the trial court entered an order declaring J.T.H. to be the child’s father. In a separate order, issued the same day, the trial court found the following:
*896 “[The father] has a history of mental instability, with two hospitalizations for treatment of mental illness, and he has been determined to be a narcissistic personality. [The father] has a history of being abusive to family members to include his mother, his two wives [sic], and other relatives. His abuse has been excessively aggressive and has resulted in permanent injury unto [the mother] and he has committed severe physical attacks unto [the mother] and on his wife, [V.A.H.], and on his mother, with outbursts of uncontrollable rage and temper accompanied by vicious physical assaults with dangerous instruments and with physical contact. His behavior has been erratic, volatile, uncontrolled, and severely brutal and demeaning to family members. His behavior has further been fueled by his taking prescribed medicine such as Zanax and abusing alcohol simultaneously. There is no indication in the record or testimony regarding [the father] that he has received or responded to sufficient psychological or psychiatric treatment to control his temper and behavior. Further, he has been unable to maintain regular and steady employment to provide for himself, his family, or children.”
The trial court denied the father all visitation privileges until the child is able “to defend himself and to report any inappropriateness,” and until the father can present expert testimony that he poses no threat to the child. The father was also ordered to pay child support in the amount of $168.00 per month.
Three issues are raised on appeal: (1) whether the trial court erred in denying the father all visitation rights; (2) whether the amount of child support awarded by the trial court was excessive, and (3) whether the trial court improperly admitted certain hospital records of V.A.H., in which she attributed her injuries to the father.
The father first contends that the trial court erred in denying him all visitation privileges with the child.
A trial court, having the benefit of an ore tenus hearing and the opportunity to personally observe the litigants and witnesses, has broad discretion in awarding visitation rights to a noncustodial parent. Andrews v. Andrews, 520 So.2d 512 (Ala.Civ.App.1987). The judgment of the trial court regarding visitation carries a presumption of correctness and will not be reversed on appeal absent a finding that the judgment is unsupported by any credible evidence and is plainly and palpably wrong. Andrews.
During the hearing before the trial court, the father testified that he was taking Zanax, that he had taken Prozac, that he had twice been committed to Searcy Hospital, and that he had been arrested for assaulting V.A.H. Both the mother and V.A.H. testified that during their relationships with the father, that he frequently had abused them and other family members, both physically and verbally; that he had threatened their lives; that his alcohol consumption was excessive; and that he took his medication while under the influence of alcohol.
Dr. Dennis E. Breiter, who conducted the court-ordered psychological testing of the father, concluded that the father “has a long history of difficulty in managing his emotions and aggression,” that he has characteristics of both a passive-aggressive personality and a narcissistic personality, that he “has some difficulty recognizing personal problems and weaknesses”, and that he “lack[s] empathy.”
We find ample evidence in the record to support the trial court’s judgment denying the father visitation rights with the child; consequently, we cannot hold that it is plainly and palpably wrong.
The father also contends that the trial court erred in ordering that he pay $168.00 per month in child support. The father’s principal argument in support of this contention is that although he testified that he was unemployed, the trial court imputed him with the ability to earn $1,000.00 per month.[2] The father testified that he has held no job for *897 longer than one year since 1987, and that except for one six-week period, he had not worked at all since August 1991. In calculating child support, the trial court must consider the parents’ gross income, unless it finds that one or both of the parents are voluntarily unemployed or underemployed. Rule 82(B)(1), A.R.J.A. Then,
“[i]f the court finds that either parent is voluntarily unemployed or underemployed, it shall impute that parent’s income and calculate child support based on that parent’s potential income which would otherwise ordinarily be available. In order to impute income for a parent who is unemployed or underemployed, the court should determine the employment potential and probable earning level of that parent based on the parent’s recent work history, education, occupational qualifications, and prevailing job opportunities and earning levels in the community.”
Rule 32(B)(5), A.R.J.A; see Tackett v. Jones, 575 So.2d 1123 (Ala.Civ.App.1990).
By his own testimony, the father provided evidence for the trial court’s consideration that he has an earning capacity of $9.00 per hour. This equates to a gross income of over $1,500.00 per month. The father also testified that he has a bachelor’s degree. Furthermore, he resides with his mother and grows his own vegetables, both of which result in reduced living expenses. In his reply brief, the father states that he has obtained employment at a convenience store, earning $4.50 per hour. Thus, the record amply supports the trial court in imputing the father with the ability to earn $1,000.00 per month.
Finally, the father contends that the trial court committed reversible error by admitting, over his objection, V.A.H.’s hospital records from Central Baldwin Medical Center from January 1992, just after she had suffered an injury to her face and upper torso. The records reflect that she stated during the medical examination that her injury had occurred when she was' “beaten up” by the father. The father asserts that these statements are inadmissible hearsay.
Sections 12-21-5 to 12-21-7, Ala. Code 1975, provide a method for admitting copies of hospital records into evidence without calling the custodian as a witness. Nevertheless, statements in a hospital record concerning the cause or manner of injury, which do not refer to diagnosis and treatment, are inadmissible hearsay. Liberty Nat’l Life Ins. Co. v. Reid, 276 Ala. 25, 158 So.2d 667 (1963). Objections to such statements must target specific portions of the medical record; however, objections to the medical record as a whole are properly overruled. See Evans v. Patterson, 269 Ala. 250, 112 So.2d 194 (1959); Smith v. State, 354 So.2d 1167 (Ala.Crim.App.1977).
The record in this case reveals that although the father objected to the medical records as hearsay, the objection pertained to the record as a whole, and not specifically to V.A.H.’s statements about the cause of her injury. Even assuming, arguendo, that the court erred in overruling the father’s objection, Y.A.H. had already testified that the father had physically abused her; thus, her medical records were merely cumulative, and the error was harmless. Rule 45, A.R.AP.
The judgment of the trial court is affirmed.
AFFIRMED.
THIGPEN and YATES, JJ., concur.

. On May 2, 1989, following ore tenus proceedings before a referee, the trial court entered an order finding J.T.H. to be the father of the child. However, by stipulation of the parties, the May 2 order was set aside, and the trial court ordered a DNA blood test of the father, the mother, and the child at UAB Hospital. The blood test revealed a 99.75% probability that J.T.H. was the child’s father.

. The father also accuses the trial court of failing to consider a pre-existing child support payment to V.A.H. However, the Child Support Guideline Form included in the record clearly reflects that the pre-existing child support payment was included in the calculation of the father’s financial obligation.